## PAUL SMITH *v.* STATE OF MARYLAND

[No. 206, September Term, 1968.]

24

Decided February 4, 1969.

Leroy W. Carroll for appellant.

Dickee M. Howard, Assistant Attorney General, with whom were Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City, and Hilary D. Caplan and Sandra A. Furtig, Assistant State's Attorneys for Baltimore City, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The questions presented on this appeal from the appellant's conviction of robbery with a deadly weapon by a jury in the Criminal Court of Baltimore and sentence of 12 years pertain to the admissibility of an in-court identification of him by the victim.

When the case came on for trial defense counsel requested the trial court, as a preliminary matter, to rule on a pre-trial "confrontation of the accused with the witness at the Police Station." It seems that what counsel desired was the exclusion of an in-court identification but he did not submit such a motion in writing (see Md. Rule 725c). The court ordered that the point be deferred for determination at the trial of the general issue. Md. Rule 725d. At the trial of the general issue the victim, James Saunders, a bus driver, after he described how he had been robbed by two men, was asked by the State if he saw either

of the robbers in the courtroom. Defense counsel said, "Your Honor, I would like, at this time, to make a motion to—" and was interrupted by the court saying it overruled the objection since the question was whether the witness saw either of the men in the courtroom. The transcript then reads:

> "By Miss Furtig (Assistant State's Attorney) Do you see either of the persons that were on the bus that night—
> A. Yes—this young man was one of them (indicating).
> Q.—in the courtroom today? Indicating the defendant, Paul Smith, for the record. Where was this—
> Mr. Karceski (defense counsel): Excuse me—Your Honor, again I would like to renew my motion on the basis that I feel the identification, according to the recent decisions, may be tainted and—"

The court said it understood that the only thing before it was the question whether the witness saw either of the men in the courtroom and overruled the objection. It is clear from the record that despite the understanding of the trial court there was before the jury the in-court identification of the appellant as one of the robbers and that the evidence was received over objection. We think that the court properly should not have admitted the testimony as to the identification until it had made a determination of its admissibility out of the presence of the jury as defense counsel had made known he desired. See Md. Rules 522b and 725f. The examination of the witness then continued as to occurrences during and following the robbery until he said that while making out his report for his employer "the dispatcher that is always on duty, he told me, say they had picked up a few fellows, and would I go down and identify them." He went down to the Western Police Station. At this point the court said that it would have to make an inquiry in connection with counsel's objection and the jury was excluded. Out of the presence of the jury testimony as to the viewing of the appellant by the victim at the police station was received from the victim, a police sergeant and the appellant. The substance of the testimony offered by the State was that when

Saunders arrived at the police station he asked directions of the desk sergeant; he was directed to a room down a corridor; a supervisor of the witness, standing by the door to the room told him to look through a small window in the door; he looked through the window and saw men in the room, some in police uniform, others in plain clothes; the appellant and the other robber were among them and the witness identified them. No police officer was present when he first made the identification and he recognized the robbers by their features and clothing. The court denied the "motion to strike from the evidence all the evidence concerning identification of the defendant; that is identification made in the courtroom on the basis of identification made at the Police Station." It said:

> "* * * [H]ere is a case where Mr. Saunders was told by his supervisor that they have arrested some people down at the Western Police Station, and you go down there and see if the people they have arrested are the people who held you up, or words to that effect. There is no evidence, whatsoever—that is, credible evidence—of any collusion on the part of the Police Department to stage this viewing or this confrontation.
>
> I accept Sgt. Vogelsang's testimony that he had had no conversation, whatsoever, with Mr. Saunders before Mr. Saunders told him that he saw behind the door the people, or, at least, the defendant among the persons in the room. So, we have no complicity here, we have no aiding and abetting, we have no flagging of the defendant.
>
> The defendant says he was in handcuffs. Sgt. Vogelsang wasn't asked about that by either counsel. Mr. Saunders says he doesn't think he was, but he is not certain. But, it seems to me it would make little or no difference whether he was in handcuffs or not, because, certainly, he was in police custody. There were police in the room, and other people in the room. Mr. Saunders says there were people in the room in civilian clothes, in addition to those in uniform.

There is no evidence about how many other people in the room were either white or black, or Caucasian or Negro. But, in any event, Mr. Saunders, I am satisfied from the credible evidence, was not aided, abetted, or assisted by anybody in looking through the window, and I am satisfied it was the window in the door and not a picture-type window described by the defendant. And seeing the defendant, whom he said he identified not only from his face, but from his wearing apparel—the light color—I believe he said the yellow jacket which the man was wearing.

We must further note that this takes place approximately two and a half hours after Mr. Saunders has been held up, while all these facts are fresh in his mind. It seems to me that this case is no different from the case where a man, as has sometimes happened, as the courts have noted, been in a police station even making out a report of the crime that has been committed upon him when the man who has committed that crime is brought into the Police Station in his presence on a charge of some other crime, and the complainant says, 'Why, there's the man, there, who did it.' I cannot see how, under these circumstances, there was a necessity that counsel be appointed for Mr. Smith at the Police Station. I find that the police were no party to this. There were no steps taken at all to flag out Mr. Smith by the police as one of the perpetrators, but that Mr. Saunders was merely asked to go and look in the window and to see—he was asked, 'Do you see anyone in there who robbed you? Do you see the two fellows who robbed you?' And he says he looked in that window, and he saw the two men— and this is within two and a half hours after he was robbed—and he says he identified them by face and by apparel. * * *

Under the circumstances as they have been related to the Court, and the credible evidence in connection therewith, I find that there was no unfairness which would preclude the evidence of the identification in

court; that this was not, in fact, a lineup; that it was not staged by the police for the benefit of Mr. Saunders; that the police were not a party to it. There was no evidence of any aiding and abetting or any hinting or suggesting that Mr. Smith was the perpetrator." [2]

After the ruling of the court the State presented to the jury through the testimony of Saunders the fact of the identification at the police station and the circumstances under which it was made. The testimony came into evidence without objection after a suggestion by the trial judge: "It would seem to me * * * that this evidence which I have taken out of the presence of the jury would now be admissible in the presence of the jury."

Two questions are presented for review by the appellant. He asks whether the pre-trial identification procedure denied him due process of law and whether he had the right to the presence of counsel when the identification was made. He answers both in the affirmative. But that these constitutional rights were violated is material only with respect to the admissibility of evidence at the trial as to the identification of him as the robber. Such evidence offered by the State and received for the consideration of the jury consisted of an in-court identification by the victim and testimony that the victim had identified him prior to trial. Evidence of the pre-trial identification was so received without objection and the question of its admissibility is not before us. Md. Rules 522d2, 725f, 1085; *Hyman v. State,* 4 Md. App. 636. State procedural requirements to raise and preserve a question on appeal, even one involving a constitutional right, may still be respected. *Baynard v. State,* 2 Md. App. 701. So the questions presented relate only to the in-court identification to which objection was made.

In support of the contention that he was denied due process of law by the pre-trial identification procedure, the appellant

---

2. There was evidence that Saunders thereafter was called to attend two lineups. The first one he did not view as the police told him that since he had previously made a positive identification it was not necessary and although he viewed the second lineup, the appellant was not therein and he made no identification.

relies on *Stovall v. Denno*, 388 U. S. 293. In *Palmer v. State*, 5 Md. App. 691, we said, citing *Stovall* at 301-302:

> "Independent of any right to counsel claim, a confrontation may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law. 'However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *.' "

In the instant case, on the record before us, we cannot say that the findings of fact by the trial court as to the circumstances surrounding the pre-trial identification were clearly erroneous. Md. Rule 1086. Accepting those findings we believe it clear that on the totality of the circumstances the confrontation leading to the pre-trial identification was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law. Therefore it could not so taint the in-court identification as to make the in-court identification inadmissible and we find no error in the overruling of the objection or the denial of a motion to strike based on that ground.

In support of the contention that he had the right to the presence of counsel at the pre-trial identification, the appellant relies on *United States v. Wade*, 388 U. S. 218 [3] and the language in *Stovall* that "* * * the confrontation is a 'critical stage' and that Counsel is required at all confrontations." 388 U. S. 298. We think it apparent that "confrontations" as used in *Stovall* are those within the meaning of *Wade*. In *Tyler v. State*, 5 Md. App. 265, 272, we thought it evident "that *Wade* does not hold that all pre-trial confrontations between the accused and the victim or other identifying witnesses are thereby deemed to be critical stages of the criminal prosecution. In our opinion, *Wade* indicates that only those pre-trial confrontations that are not subject to fair and meaningful objective review later at the trial fall within its strictures, so that where the circumstances of the confrontation can be fully developed at the trial by cross-examination of the State's witnesses, or by

---

3. The pre-trial confrontation was subsequent to 12 June 1967.

presentation of witnesses on behalf of the defendant, the right to counsel does not attach." In the instant case, again accepting the findings of fact of the trial court, we do not think that pre-trial identification of the appellant was a "confrontation" within the meaning of *Wade*. It certainly was not a lineup within the usual use of that word. It did not occur at the direct instance of the police nor were they a party to it. Compare *Palmer v. State, supra.* It appears that the manner in which the victim viewed the appellant was more by happenchance than design and we agree that with the trial court's opinion that he could not "see how, under these circumstances, there was a necessity that counsel be appointed for Mr. Smith at the Police Station." We note in addition that even when a confrontation is conducted for identification purposes without notice to and in the absence of the accused's appointed counsel, an in-court identification by a witness who so viewed an accused is admissible if the prosecution establishes by clear and convincing evidence that the in-court identification had a source independent of the confrontation. *Wade* at 241. We think here that, even granting a primary illegality, the evidence was sufficient to show that the challenged in-court identification was come at by means sufficiently distinguishable to be purged of the primary taint. The victim testified that he had a new bus and "at night you could see each and every move that a person could make on the bus. You could look in any direction, * * * you could tell where their hands are going or anything on the new coach." There was "very good lighting" in the bus. The robbers entered the bus at "Cold Spring and Dolfield." There was one other passenger who got off about two blocks later. The robbers were the only passengers on the bus when it reached the end of the line at "Garrison and Belvieu." The appellant took the money out of the box and was facing the victim at that time while his companion placed a gun at the victim's head. The victim had ample opportunity to observe the appellant prior to and at the time of the commission of the crime and said he made the in-court identification "by the features of his face." We find no error in the overruling of the objection to the in-court identification on the ground that the pre-trial identification was made in the absence of counsel for the appellant.

We have stated above that the court properly should not have admitted the in-court identification when it was first received because at that time it had not made a determination of its admissibility as affected by the pre-trial identification. Although this was error, in view of our holding that the challenged testimony was properly admissible, the error was harmless.[4]

*Judgment affirmed.*

4. When an in-court identification is challenged on the ground that it was tainted by the circumstances surrounding a pre-trial identification and the trial court after receiving evidence out of the presence of the jury determines that the in-court identification is admissible, there is a question whether the State must submit the evidence on the point, introduced before the court, for the consideration of the jury. The question is not here properly before us and we leave it open. We see nothing in *Wade* to indicate that the question of the admissibility of an in-court identification is other than a matter of law for the trial judge as it is ordinarily in the admission of evidence. But the question is more complex in Maryland where the jury are the judges of law as well as of fact. Of course, whether or not the in-court identification is challenged, once it is admitted the defendant, in the presence of the jury, may cross-examine the witness as to any pre-trial identification by him and the circumstances surrounding it and may offer evidence in his own behalf with respect thereto as relevant to the weight to be given the in-court identification and the credibility of the witness.