### EDWARD WATSON *v.* STATE OF MARYLAND

[No. 307, September Term, 1968.]

*Decided June 17, 1969.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*J. Allan Cohen* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred K. Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted by a jury in the Criminal Court of Baltimore of rape and was thereafter sentenced by the court to life imprisonment. He contends on this

appeal that (a) his pretrial identification at the police station by the victim was illegal as it was made in the absence of counsel, (b) that as he was the only person shown to the victim at the pretrial confrontation, such procedure was unnecessarily suggestive and conducive to irreparable mistaken identification and, as such, constituted a denial of due process, and (c) that as the in-court identification of appellant by the victim was the product of the illegal pretrial confrontation, the in-court identification was improperly admitted in evidence at the trial.

Appellant filed a pretrial motion to preclude the victim of the crime from making an in-court identification of him at the trial on the ground that such identification would be predicated on an illegal extrajudicial identification made in violation of his Sixth Amendment right to counsel under *United States v. Wade,* 388 U. S. 218, and *Gilbert v. California,* 388 U. S. 263, and/or in violation of his Fourteenth Amendment right to due process of law under *Stovall v. Denno,* 388 U. S. 293. Out of the presence of the jury, the following evidence was adduced on this issue: The victim of the alleged rape, Asella Powell, testified that in the early evening hours of December 25, 1967, she left her house to locate a cab for a friend at which time she saw "this fellow" walking with "his head down and his hands in his pockets, and his hands very close"; that she knew this individual "from days when he used to play football with the children on Lanvale Street, and when she used to sit on the steps and see him walking by my house, practically every day he was just around, he was a neighborhood boy." She identified the appellant as that person. Mrs. Powell returned to her home but soon thereafter again left, this time to go to a friend's house. On her way, she was held up by a person who placed a gun into her side. Mrs. Powell testified that when this occurred, she "looked up" and saw the robber's face. She identified the appellant as that individual. The appellant then forced her up an alley, searched through her clothing and between her legs for money and threat-

ened to kill her. Mrs. Powell testified that she looked at appellant during this time but that he made her turn her head. He then forced her to have intercourse with him in a sewer pipe.

Mrs. Powell promptly reported the crime to the police and described her assailant as seventeen or eighteen years old, 135 pounds, and from 5'4" to 5'8" in height. Asked whether she told the police at that time that she knew her assailant as a neighborhood boy, she stated, "I think I have, I did tell them that if I am not mistaken." Asked whether she told the police that she didn't see her assailant's face, Mrs. Powell answered:

> "I told the first time I didn't see his face, only he would hide his, he would, when I seen his face the first time he seemed to, didn't know I knew who he was, and he kept the revolver on me, from then on he wouldn't let me see his face anymore."

She admitted telling the police that she did not think she could pick him out from a photograph. Asked why, if she knew who her assailant was, she didn't tell the police, she stated:

> "You don't just, this is something serious, and I do not jump right up to a conclusion because somewhere along the line when you go to thinking there could be some wrong there, you have to have time to study, you know, those things, study over that thing, don't jump right then, you don't jump in the fire right then."

Despite these apparent equivocations, Mrs. Powell testified that she knew all along that the appellant was the person who raped her. She further testified that she ascertained through her own investigation that appellant's full name was Edward Watson, and that he lived in the 900 block of Stricker Street; that she gave this information to the police at the Western District, but that a

week after the crime had been committed she saw appellant on the street; that he looked her right in the face and came up and stood near her; that as a result of seeing appellant on the street, she went to the Western District Station on January 11, 1968, to "see what was happening" and "to return the name who this boy was"; that the police reviewed their file at that time and told her they would "try to get on this case and see what could be done"; that she "told them the night I gave his name" and the block in which he lived; that subsequently on that day Officer Joseph Mitchell came for her "to see could I identify this person" and took her to the Western District Station; that she was told by the police that they had Edward Watson; and she was asked by the officers to walk "out the back and if I had seen him I was supposed to identify him"; that as she did so she saw the appellant standing alone by the door near the entrance to the police parking lot, and she identified him.

Mrs. Powell testified that she had attended a lineup sometime prior to January 11, but was unable to pick out any of the participants as her assailant. Asked whether her identification of appellant as the person who raped her was "because you remember him from the night of the incident, or because you saw him in the Western District Police Station," she replied, "No, I remember him and what he did."

Officer Joseph Mitchell testified that at four o'clock on January 11, 1968, Mrs. Powell came to the police station and told him about the crime; that he located a report in the police files and "found the guy's name, his first name was Edward"; that he knew a person in that neighborhood by the name of Edward, and after checking with other people in the neighborhood who knew an individual by that name, and noting that the description given by them was similar to that given by Mrs. Powell, he obtained appellant's name and address. Mitchell testified that Mrs. Powell had accompanied him during his preliminary investigation in the neighborhood, but that he had taken her home at approximately 5:30 p.m.; and

that she stated that she intended to return to the station that night. Asked whether earlier that evening he had gone to Mrs. Powell's home to bring her to the station, Mitchell replied:

> "That was earlier in the evening, yes, that was around, that was, I had Miss Powell with me when I was asking the neighborhood who this guy was. That was after I had left the station."

Mitchell testified that he went to appellant's home for the first time on the afternoon of the 11th; that he was not then at home, but that, on his second visit to appellant's house, at approximately 8:30 p.m., he found appellant at home; that he told appellant that he was suspected of a rape and asked him to accompany him to the police station, which appellant voluntarily agreed to do; that appellant was not then under arrest, and it was not his purpose to show him to Mrs. Powell or to hold a lineup; that he was not sure that appellant was the person he was looking for; and that upon arriving at the station, he went to get a drink of water and observed Mrs. Powell "leaving the station, and was going out toward the parking lot, and then she called me and said, that is the man right there that raped me," indicating the appellant; and that appellant was standing by the door leading to the police parking lot at the time of his identification. Mitchell could not recall whether any officers accompanied Mrs. Powell when she identified appellant. He denied having asked Mrs. Powell to come to the station to identify appellant and he denied knowing that she would be there. He denied picking her up or asking that she be brought to the station to identify appellant. He did not know whether any other officers had brought her to the station at that time.

Mitchell testified further that appellant was not placed in a cell, photographed or fingerprinted upon his arrival. He stated that during his investigation he noticed in the police report that Mrs. Powell had allegedly told the po-

lice that she didn't see appellant's face at the time of the crime; but that she had told him that she did see his face and meant only that she didn't see his face during the time that appellant had her on the ground.

The appellant, a seventeen-year-old youth, residing at 911 Stricker Street, testified that Officer Mitchell told him he was a suspect in a rape case and that he voluntarily accompanied the officer to the police station in a police car; that Mitchell called on his car radio stating that he was bringing Edward Watson in on a rape charge and "to pick up the lady" and have her brought in; that upon arriving at the station, he was placed in a cell from five to ten minutes, photographed and fingerprinted; that thereafter, he was taken near a door in the Sergeant's room where Mrs. Powell came in and identified him.

At the conclusion of this evidence, the trial judge denied appellant's pretrial motion to preclude the victim of the crime from making an in-court identification at the trial. The court stated that the victim impressed it as being an intelligent, observant, and mature witness; that she knew the appellant prior to the crime from "the neighborhood" and had seen him on many occasions; that she conducted her own investigation and thereby ascertained his full name and the street of his residence; that appellant was not placed in a lineup at the Western Police Station in the usual sense of that term; and that her identification of appellant at that time did not originate from that confrontation. The trial judge stated that Officer Mitchell's testimony and that of Mrs. Powell showed that the latter had not gone to the police station to identify appellant in a lineup, that the police did not point appellant out to her, and that the confrontation at that time was "by accident and by chance." The court concluded: "I will permit Miss Powell to give her in-court identification in this proceeding."

In brief then, the appellant's motion was to preclude an in-court identification by the victim and the court's ruling permitted the State to make such an in-court identification before the jury. Neither appellant's pretrial mo-

tion nor the court's ruling thereon, involved the question of suppression of a prospective extrajudicial identification by either the victim or by the police.

At the trial before the jury Mrs. Powell testified substantially as she did at the hearing on the pretrial motion and identified appellant as her assailant. No reference was made on the State's direct examination of Mrs. Powell of her extrajudicial identification of the appellant at the police station, nor did appellant on cross-examination make any reference to it. But the State recalled Mrs. Powell to testify and asked her whether she had identified appellant at the Western Police Station on January 11, 1968, and she stated, over appellant's objection, that she had. While she testified that the police did not point appellant out to her at that time, she stated on cross-examination that at 9:00 or 9:30 p.m. on January 11, she was told to come to the police station "to identify a person"; that she came to the station and sat there "until I was told to walk out" by Officer Mitchell, through the Desk Sergeant's room to the parking lot; that Mitchell accompanied her and said that she was to identify "a man that was standing there"; and that she saw appellant standing alone and identified him.

Officer Mitchell testified before the jury substantially as he did at the hearing on the pretrial motion. He again denied that he had asked Mrs. Powell to come to the station or that he had asked other police officers to tell her to do so. Mitchell testified to Mrs. Powell's extrajudicial identification of appellant at the police station. Appellant made no objection to this testimony.

Officer Charles Mahoney testified for the defense that he had investigated the alleged rape immediately after it had been reported by Mrs. Powell, and that she told him at that time that she did not see the face of her assailant because he held a revolver to her head during the crime. Mahoney testified that he was with Mrs. Powell some two hours and had she told him that she knew her assailant, he would have included it in his report.

Appellant also testified at the trial substantially as he

did at the pretrial hearing. There was also testimony from a number of defense witnesses which, if believed, tended to establish appellant's innocence of the crime.

In *Smith and Samuels v. State,* 6 Md. App. 59, we held that the rules of *Wade* and *Gilbert* apply to pre-indictment, as well as to post-indictment lineups, and to other police-initiated pretrial confrontations that are not subject to fair and meaningful review later at the trial. We think it too clear to require discussion that, absent exigent circumstances, if the police intentionally arrange for a victim of a crime to view a suspect singly at the police station for the purpose of making an identification, such a confrontation cannot escape the strictures of *Wade* and *Gilbert* by characterizing it other than as a police lineup and, as such, not within the coverage of those cases. Similarly, any pretrial confrontation between a victim of a crime and the accused, arranged by the police for identification purposes, may be conducted under conditions so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law under *Stovall v. Denno, supra.* See also *Palmer v. Peyton,* 359 F. 2d 199 (4th Cir.) ; *Tyler v. State,* 5 Md. App. 265. And while the question of whether the accused's right to due process was violated in the conduct of such a confrontation depends on the totality of the circumstances surrounding it, *Gibson v. State,* 5 Md. App. 320, it is readily evident that where the police, by pre-design, arrange a one-to-one confrontation between the victim and the accused in the police station, such a circumstance, of itself, would necessarily have great bearing on the question of whether there has been a denial of the accused's Fourteenth Amendment right to due process of law. See *Stovall v. Denno, supra,* at page 302, where the Supreme Court noted that "The practice of showing suspects singly to persons for the purpose of identification, and not as a part of a lineup, has been widely condemned."

It is now well settled that where a pretrial confrontation is illegal either because the accused's right to coun-

sel was violated or because such confrontation constituted a denial of due process, the in-court identification of the accused by the witness at such confrontation is to be excluded from evidence unless the prosecution establishes by "clear and convincing evidence" that the in-court identification was based upon observations of the suspect other than the pretrial confrontation identification, *viz.,* that it had an independent source. But evidence that the witness made an extrajudicial identification of the accused at the illegal confrontation is *per se* excluded and the State is not afforded an opportunity to show that that testimony had an independent source. And where evidence of an illegal extrajudicial identification is admitted at the trial, it constitutes prejudicial error unless its introduction can be found harmless beyond a reasonable doubt. *Bailey v. State,* 6 Md. App. 496; *Paul Smith v. State,* 6 Md. App. 23; *Palmer v. State,* 5 Md. App. 691; *Bowen v. State,* 5 Md. App. 713. Conversely, where the court finds that the pretrial confrontation was legal, an in-court identification by the witness present at the pretrial confrontation is admissible as substantive evidence. If such witness made a lawful pretrial identification, his testimony to that effect is also admissible, and the testimony of a third party present when such pretrial identification was made is likewise admissible, provided the out-of-court declarant is at the trial and subject to cross-examination. See *Smith and Samuels v. State, supra,* at page 68.

The question whether the pretrial confrontation was lawful is a matter exclusively for the court. *Smith and Samuels v. State, supra.* But the reliability of *properly* admitted eyewitness identification, like the credibility of the other parts of the prosecution's case, is a matter for the jury, it being the teaching of *Wade, Gilbert* and *Stovall* that in some cases the procedures leading to an eyewitness identification may be so defective as to make identification constitutionally inadmissible as a matter of law. *Foster v. California,* 394 U. S. 440.

We think it clear from the evidence that the trial court

could have properly found as it did that the State adduced "clear and convincing proof" that Mrs. Powell's in-court identification of appellant was based upon her observations of him other than at the pretrial confrontation in the police station. But while the State was obviously not required to adduce evidence of the extrajudicial identification before the jury (see *Bailey v. State, supra, Smith and Samuels v. State, supra*), it nevertheless chose to do so over appellant's objection that such pretrial confrontation identification violated his Sixth and Fourteenth Amendment rights.[1] The jury thus had before it evidence of the extrajudicial identification, and the question is whether, for purposes of determining the admissibility of that extrajudicial identification, the pretrial confrontation at the police station was legal or illegal.

In *Paul Smith v. State, supra,* the bus driver victim of an armed robbery was directed by his dispatcher shortly after the robbery to go to the police station to identify a suspect. When he arrived, the Desk Sergeant directed him to a room down the corridor where he saw his supervisor standing by the door. Told by his supervisor to look through a small window in the door, the victim observed a number of men in the room, some being uniformed police officers and the others being in plain clothes. The victim identified appellant as one of the robbers. No police officers were present when the identification was made. The trial judge made extensive findings of fact and concluded that there was no collusion on the part of the

---

1. Manifestly, it is not the obligation of the State to put before the jury evidence of a pretrial identification which is *per se* to be excluded as obtained by an illegal procedure, since the admission of such evidence would require that the conviction be set aside unless such identification was found to constitute harmless error. The pretrial confrontation may, of course, be brought out by the accused on cross-examination of the State's witness making an in-court identification at the trial so as to show the trier of fact the circumstances under which the pretrial confrontation was held. Evidence so elicited by the accused affects the weight of the identification evidence produced by the State, as well as the credibility of the identifying witness. See *Bailey v. State, supra, Smith and Samuels v. State, supra.*

police to stage the confrontation and admitted the in-court identification over defendant's objection that such confrontation violated his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process of law. As we were unable to say that the findings of fact by the trial court as to the circumstances surrounding the pretrial identification were clearly erroneous under Maryland Rule 1086, we held that on the totality of the circumstances, the confrontation leading to the pretrial identification was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process; and, further, that the confrontation was not one within the meaning of *Wade* and *Gilbert;* that it was "not a lineup within the usual sense of that word" and "did not occur at the direct instance of the police, nor were they a party to it"; and that "the manner in which the victim viewed the appellant was more by happenchance than design."

In *Palmer v. State, supra,* the victim of the crime identified the accused while he stood alone, without counsel, in the stationhouse court room, at a time when no judicial proceedings were being conducted. We there found that this was a confrontation within the meaning of *Wade*—one not subject to meaningful objective review later at the trial. We held that evidence adduced on examination by the State that the witness identified the appellant at this confrontation was *per se* excludable under *Gilbert* and that in the circumstances we could not declare a belief that the error was harmless beyond a reasonable doubt.

In *Coit v. State,* 7 Md. App. 70, an eyewitness to a crime, while on his way down a corridor at the police station to attend a lineup, observed the defendant with other prisoners sweeping the cell block. The extrajudicial identification was not offered in evidence by the State, but by the defendant. We found no infirmity under the circumstances in the pretrial identification and held that the in-court identification was properly received in evidence.

In *Wethington v. State,* 7 Md. App. 79, it was contended that an extrajudicial identification at the police station constituted a violation of the accused's right to due process of law. The evidence there showed that the victims of the crime were requested by the police to sit in the lobby of the police station to see whether they could identify the person who committed the crime. The evidence there indicated that while the police had no idea what the accused looked like, they did have reason to believe that he would come to the police station to make a report. The victims identified the defendant while he stood outside the police station in the midst of considerable pedestrian traffic. We held, on the totality of the circumstances, that the extrajudicial identification did not result from an impermissibly suggestive confrontation. See also *Rivers v. United States,* 400 F. 2d 935 (5th Cir.) *United States v. Trivette,* 284 F. Supp. 720 (D.C. D.C.)

In the instant case, the trial judge found from the evidence that the confrontation at the police station between the victim and the appellant occurred "by accident and by chance." But in so concluding, the lower court did not resolve the obvious conflict between the testimony of Mrs. Powell and Officer Mitchell. If the trial judge believed Mrs. Powell's version of the circumstances under which she identified the appellant at the police station, he could only have concluded, as a matter of law, that the confrontation was not by accident or chance, but was arranged and staged by police in direct violation of appellant's right to counsel under *Wade* and *Gilbert,* and to due process of law under *Stovall.* On the other hand, if the trial judge believed Officer Mitchell's testimony, he could have concluded that the officer did not *personally* contrive the one-to-one confrontation, although he had no knowledge whether other police officers may have done so. In view of the trial court's failure to resolve the conflict,[2] we believe its decision to permit the extrajudicial identifica-

---

2. The court did find that the testimony of Officer Mitchell and Mrs. Powell was consistent to the extent that Mrs. Powell did not come to the police station for the purpose of *viewing a lineup.*

tion in evidence before the jury over appellant's objection was clearly erroneous as lacking the necessary foundation to show that the one-to-one confrontation occurred by accident or chance. While Mrs. Powell may have been mistaken in her belief that it was Officer Mitchell who brought her to the police station and asked her to identify the appellant as he stood alone in the stationhouse, we think her testimony showed, in effect, that it was the police who initiated the stationhouse identification under conditions wholly at variance with the notion that the confrontation occurred by accident or chance.

Moreover, we hold that the admissibility of the extrajudicial identification did not constitute harmless error beyond a reasonable doubt within the meaning of *Chapman v. California,* 386 U. S. 18. In so concluding, we are mindful of the State's argument that the pretrial confrontation did not result in an identification of the appellant by Mrs. Powell, but merely served to satisfy the police that the person they had picked up was the same person, previously known to Mrs. Powell, whose name and address she had earlier provided them. While it is true that Mrs. Powell testified that she knew appellant prior to the crime, it is also true that there was evidence indicating that she did not tell the police of this fact at the time of their initial investigation, that she told the police that she didn't see her assailant's face, and otherwise gave equivocating testimony respecting her identification of the appellant. In addition, the record discloses some confusion about whether Mrs. Powell had actually secured appellant's full name, or only his first name, since Officer Mitchell's testimony seemingly indicates that he was looking only for a boy named Edward in the 900 block of Stricker Street. Under these circumstances, we are unable to declare a belief, beyond a reasonable doubt, that the extrajudicial identification evidence was harmless, particularly since such identification occurred approximately two weeks after the commission of the crime and the jury may well have concluded that this identifi-

cation was more reliable than the in-court identification made six months later at the trial.[3]

> *Judgment reversed; case re-*
> *manded for a new trial.*

---

3. The fact that appellant made no objection to the testimony of Officer Mitchell concerning the victim's extrajudicial identification of him does not, in the circumstances of this case, render the victim's testimony of such identification, made earlier at the trial over objection, harmless beyond a reasonable doubt.