# JAMES MILLS *v.* STATE OF MARYLAND

[No. 268, September Term, 1973.]

*Decided January 4, 1974.*

The cause was argued before MORTON, MOYLAN and GILBERT, JJ.

*Alexander R. Martick* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen,*

State's Attorney for Baltimore City, and Mark Van Bavel, Assistant State's Attorney for Baltimore City, on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

James Mills, appellant, was convicted by a jury in the Criminal Court of Baltimore of robbery and was sentenced to incarceration for a period of six years.

In this Court appellant avers that the judgment of the Criminal Court of Baltimore should be reversed because, (1) the trial judge erred in refusing to strike the in-court identification of the appellant by the prosecuting witness on the ground that the identification was tainted by an impermissibly suggestive confrontation, and (2) that the trial judge should have granted a motion for judgment of acquittal.

The record reveals that Stanley Jenkins, at approximately 1:45 A.M. on March 24, 1972, was driving a Checker Cab. He picked up two passengers at the intersection of Pennsylvania Avenue and Gold Street and drove them to the corner of McCulloh and Bloom Streets. Appellant was identified by Jenkins as one of the two passengers. According to Jenkins, appellant was seated on the front seat on the right-hand side of the cab. The second passenger was seated on the back seat on the left-hand side of the cab. Jenkins said the appellant originally told him that he wanted to go somewhere in East Baltimore. When the cab approached McCulloh and Bloom, appellant told Jenkins to pull up. Appellant, who had his hand in his pocket, indicated to Jenkins that he would "blow" Jenkins's "brains out". Appellant asked for cash, and Jenkins gave a money bag to the appellant. The passenger on the back seat, who was not otherwise identified, exited the cab and opened the left-front door, at which time the interior lights of the cab became lighted. He then took twenty-five dollars ($25.00) from Jenkins's "left-hand pocket". Both passengers then fled, and Jenkins, using the taxi-cab radio, broadcast an emergency call for the police. Subsequently, appellant was

apprehended in the area while he was hiding or lying under a parked motor vehicle. Jenkins went to the Central Police Station approximately one-half hour after the hold up and while there he saw the appellant. During cross-examination Jenkins stated that the appellant, who was in police custody and was the only other person in the room besides the police, was brought to Jenkins, and "They asked me was this the man". Jenkins said that he readily identified appellant as one of the robbers. As a result of the evidence adduced on cross-examination that there had been a one-on-one confrontation between Jenkins and the appellant, appellant's counsel, upon the completion of Jenkins's testimony, moved to strike the identification on the ground that it was impermissibly suggestive and thus tainted the in-court identification. The trial judge took the position that the appellant's motion was tardy because counsel had waited until the completion of the cross-examination. The judge also opined that the motion was denied because the State had not introduced the evidence of the confrontation but that it had first arisen on cross-examination. Furthermore, the trial judge said that there was an independent source to the identification. The trial judge was wrong.

The record is clear that neither the State nor the defense was aware of a possibly illegal confrontation until that fact was established on cross-examination. When the appellant moved to strike the identification the trial judge should have treated the motion as a motion to suppress the evidence and then conducted a hearing outside of the presence of the jury on the question of illegality of the confrontation, and whether or not the identification had an independent source. *Smith v. State*, 6 Md. App. 59, 250 A. 2d 285 (1969), *cert. denied*, 397 U. S. 1057, 90 S. Ct. 1402, 25 L.Ed.2d 674 (1970). Illegality of confrontation, whether shown by the State through its evidence or by the defense, is measured by the same yardstick. The fact that the defense and not the State demonstrates that a confrontation is illegal does not excuse the confrontation. We are unable to accept the trial judge's reasoning that because the defense and not the State showed the one-on-one confrontation, that the defense was precluded from attacking it. That is not the law of

Maryland. As we said in *Watson v. State*, 7 Md. App. 225, 255 A. 2d 103 (1969), n. 1, at 236:

> "Manifestly, it is not the obligation of the State to put before the jury evidence of a pretrial identification . . . . The pretrial confrontation may, of course, be brought out by the accused on cross-examination of the State's witness making an in-court identification at the trial so as to show the trier of fact the circumstances under which the pretrial confrontation was held. Evidence so elicited by the accused affects the weight of the identification evidence produced by the State, as well as the credibility of the identifying witness. See *Bailey v. State*, [6 Md. App. 496, 252 A. 2d 85 (1969)], *Smith and Samuels v. State, supra.*"

Moreover, appellant's motion was, in our view, timely made and the fact that appellant's counsel continued his cross-examination after exposing the one-on-one confrontation did not constitute a waiver.

The general rule is that once taint is shown as a result of an illegal confrontation, the burden then shifts to the State to show by clear and convincing evidence that the identification had a source independent of the confrontation. *Smith v. State, supra* at 68. In the present case, the judge found evidence of an independent source within the testimony of Jenkins. The judge said:

> "I do not state it verbatim, but he was asked in essence how he knows this is the man [the appellant]. He said, *'I know him. I saw his face at the time of the offense.'* So, there is independent identification, *i.e.*, Jenkins' testimony that he made the identification because he saw Mr. Mills' face and he knew his face." (Emphasis supplied).

Our review of the record discloses no such testimony. The record does reveal that during the cross-examination of Jenkins he was asked:

> "Are you telling us that you are not really sure

today of all the testimony you have given because this happened over a year ago?"

Jenkins replied:

> *"I'm sure of the face I see in the courtroom.* I'm not sure of all the descriptions and what he was wearing and what he had on. I'm just saying I'm positive he had on a light jacket." (Emphasis supplied).

It is apparently on this testimony that the judge relied to find that the identification of appellant by Jenkins had an independent source. The statement "I'm sure of the face I see in the courtroom" does not in and of itself indicate upon what it is based. We are unable to determine from the record whether the statement was made because of Jenkins's observation of appellant during the robbery or because of his observation of the appellant at the police station confrontation. After the disclosure of the confrontation on cross-examination, the State on redirect examination apparently relied upon the trial judge's ruling and did nothing to establish by clear and convincing evidence that the identification had an independent source.

It may well be that at a retrial of this matter the State will be able to show by clear and convincing evidence that the identification of appellant by the victim did in fact have an independent source.

*Judgment reversed.*
*Case remanded for a new trial.*