## BRUCE ALLEN WETHINGTON *v.* STATE OF MARYLAND

[No. 242, September Term, 1968.]

*Decided May 23, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Charles T. Finley* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Benjamin R. Wolman, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

PER CURIAM.

This is an appeal from convictions by a jury in the Circuit Court for Prince George's County of indecent exposure and assault with intent to maim. The pertinent facts are set forth in Chief Judge Murphy's opinion in *Wethington v. State,* 3 Md. App. 237, where this Court reversed Wethington's prior convictions on the same charges and granted a new trial. The present appeal is from convictions entered upon retrial.

It is first contended that the extra-judicial identifications of the appellant was so unfair and unreliable that it amounted to a denial of due process and, accordingly, the appellant's pretrial motion to suppress should have been granted. Appellant does not rely upon *United States v. Wade,* 388 U. S. 218, and *Gilbert v. California,* 388 U. S. 263, since the identification was prior to June 12, 1967. *Stovall v. Denno,* 388 U. S. 293. Instead, he relies upon the basic proposition that evidence of an extra-judicial lineup or confrontation is inadmissible if conducted under conditions of unfairness or unreliability.

*Stovall v. Denno, supra;* see *Palmer v. State,* 5 Md. App. 691; *Reeves v. State,* 3 Md. App. 195.

At the hearing on the motion to suppress, Lieutenant Bryan of the Prince George's County Police testified that on June 13, 1966, three days after the commission of the criminal acts, the three victims of the indecent exposure and assaults were requested to be present at the Oxon Hill Police Substation, sit in the lobby of the station, and see if they could identify any individual entering or leaving the premises as the perpetrator of the offenses. In making the request, Lieutenant Bryan was aware that the tag number of the vehicle involved in the assault incident which had been furnished the police by the victims was the same as the tag number on a vehicle recently reported stolen and that the registered owner of the vehicle had been told to come to the station at 5:00 p.m. that day to reclaim it.

The victims, according to Bryan, arrived at the substation and, after remaining in the lobby for some time, observed the appellant on the sidewalk just outside the entrance as he was about to enter the station. Bryan also stated that there was a substantial volume of pedestrian traffic in the substation at this time of evening; that appellant was unaccompanied by any police officers; that none of the police officers had any personal knowledge of appellant's physical appearance prior to the identification by the witnesses; and that the substation was in a semi-commercial area.

Subsequent to the identification, Bryan stated that he took the appellant to an upstairs room within the station after giving him the requisite warnings and had each witness come up singly, confront the appellant and accuse him.

The appellant testified that he came to the station to sign a release for his car, which he had earlier reported stolen. He entered the station but did not see the victims. When advised by the desk sergeant that he would have to wait since Lieutenant Bryan wanted to talk with him, he returned to the parking lot to tell his mother and stepfather that he would be detained.

As he returned to the building, he heard the desk sergeant say to the witness that "I was the owner of the Dodge and * * *." He further stated that he was then taken upstairs by Lieutenant Bryan and confronted by each witness, "after they sat outside the door for almost an hour." He also asserted that the witnesses could hear and observe each other as they made their identification before Lieutenant Bryan.

The appellant points out that the Supreme Court in *Stovall v. Denno, supra,* stated that "the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." He asserts that the identification procedure here was clearly unfair and unreliable. If the identification had been made at the time the appellant was confronted by the witnesses upstairs in the substation in the presence of Lieutenant Bryan there would be real substance to his contention. But the evidence clearly shows, as indicated in the excerpt of Lieutenant Bryan's testimony set forth below, that the identification had already been made:

> "Q. After you got to the police station and you went to the Sergeant's Office and confronted the defendant, what did you do from that point on as far as this defendant is concerned?
>
> A. Chronologically I am not sure. I know he and I went upstairs to the Detective Bureau to discuss it, and the people who were sitting in the lobby and identified him either came in or was in the station there. I think, if I am not mistaken, they first saw him outside, walking down the sidewalk.
>
> Q. Is it your testimony that you took this man to a room?
>
> A. Yes, sir; I did take him upstairs to the Detective Bureau.
>
> Q. Did the witnesses at any time go upstairs?
>
> A. Yes, sir; they came up later. I had talked to Mr. Wethington. He denied being involved

in any manner, shape or form. I brought the witnesses in in order to let them directly accuse him, which they did, but as far as bringing them in to make an identification, no, the identification had been made downstairs earlier in the lobby or out on the street, I am not sure which.

Q. Your testimony is that you brought the witnesses in to directly confront the accused, but that the identification had been made downstairs?

A. They had identified him downstairs; however, this man—

Q. Did they identify him to you?

A. They had told me this man was the man, yes."

In our opinion the identification of the appellant did not result from an impermissibly suggestive confrontation. The evidence is clear that the appellant was independently recognized and identified by the witnesses from among the many people who were in and about the police station in the early evening hours; that prior to the identification the police did not know what the appellant looked like; that they were not positive he would even appear in the station; and that the witnesses were simply requested to be present to ascertain if they could recognize any individual involved in the offenses. In the totality of the circumstances, we cannot say that the identification procedure here was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law. See *Stovall v. Denno, supra,* 302; *Palmer v. State, supra.*

The appellant next contends that his arrest was illegal. He argues that the police officers did not have probable cause to make the arrest since "the identification was 'rigged' and under these circumstances the identifications made by the complaining witnesses are not reasonably trustworthy information sufficient in themselves to warrant a man of reasonable caution to

believe that appellant had committed the crimes." This contention is without merit since we have found that the identifications of the appellant were not made under circumstances of unreliability or unfairness.

The appellant finally contends that Md. Code, Art. 27, § 122, is unconstitutional. However, the appellant was not charged under this statute. He was indicted for the common law crime of indecent exposure. See *Kirkorian v. State*, 233 Md. 324. Accordingly, the question is not properly before us.

*Judgments affirmed.*