# HENRY GRAHAM *v.* STATE OF MARYLAND

[No. 491, September Term, 1968.]

*Decided September 10, 1969.*

The cause was argued before MURPHY, C.J., and MORTON, ORTH, and THOMPSON, JJ.

*Walter D. Webster* for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, John L. Sanford, Jr., State's Attorney for Worcester County,*

and *Theodore R. Eschenburg, Assistant State's Attorney for Worcester County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was convicted of murder in the first degree, without capital punishment, by a jury in the Circuit Court for Worcester County and sentenced to life imprisonment. His previous conviction of the same crime had been affirmed by the Court of Appeals of Maryland, *Graham v. State,* 239 Md. 521, and subsequently set aside by this Court in a Post Conviction proceeding, *Graham v. Warden,* 2 Md. App. 422, on the basis of *Schowgurow v. State,* 240 Md. 121.

Appellant first contends that there was no probable cause for his warrantless arrest and, accordingly, asserts that a pistol seized by the authorities at the time of his arrest was improperly admitted into evidence.

The record indicates that the body of Zadok Henry, age seventy-six, was found on January 31, 1964, in the rear of his second-hand furniture store in Berlin, Worcester County, Maryland. An examination of the body by the Deputy Medical Examiner disclosed four gunshot wounds, at least one of which was fatal. Sergeant John S. Sawa, the State Police ballistics expert, upon examination of three bullets recovered from the victim's body, found that they were Remington golden .22 caliber bullets and were fired from one of five different type weapons, including a type known as a "Rohm" .22 caliber, double action revolver.

On February 2, 1965, in the course of investigating the murder, Deputy Sheriff Rhen Lane talked with Allen Benjamin Moore concerning a "Rohm" .22 caliber pistol owned by Moore. Later, on February 7, 1965, Moore called Deputy Sheriff Lane and told him he wanted to see him. Upon Lane's arrival at about 3:30 p.m., Moore told him that the appellant had a .22 caliber pistol very similar to his own. Moore also stated that the appellant had visited him the day before at which time he saw the pistol in appellant's possession and saw appellant load the gun.

Appellant had asked if he could stay at Moore's house but when Moore advised him that the police came to the house regularly, appellant said, "Well, I can't stay here then." He also stated, "If they [the police] do—if they take me—they have to take me dead." Moore also told the officer that the appellant was hiding in the woods during the daytime and was coming home at night to a shack across the road from the house in which appellant's wife and children lived.

That night, acting upon the information obtained from Moore, Deputy Sheriff Lane along with several other officers went to appellant's home, which was three and one-half miles from the scene of the murder. Arriving at 12:50 a.m., they found the door padlocked with a note thereon which read: "Have gone to Salisbury. Be back tomorrow." and signed, "Christine." The officers then went across the road to the shack described by Moore but found it locked. Deputy Sheriff Lane testified that during the course of investigating the shack, "* * * I was in the back of the building and the window started opening and Henry [the appellant] started easing himself out of the window * * *." Lane then yelled to his fellow officers who, after beating on the door and demanding entry, broke into the shack. They found the appellant in a crouched position in the corner of a small room in the shack holding a "Rohm" .22 caliber pistol. Appellant dropped the pistol onto a washing machine next to him and was then taken into custody. At appellant's trial the pistol was admitted into evidence, over objection, after the State Police ballistics expert testified that the pistol had fired the bullets that were recovered from the victim's body.

The existence of probable cause to justify an arrest without a warrant depends upon the circumstances in each particular case. On the record before us we find that the arresting officers had probable cause to believe that the appellant murdered Zadok Henry and, therefore, the admission of the pistol into evidence was proper.

Probable cause exists when the facts and circumstances

within the knowledge of the arresting officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious person to believe that a felony had been committed by the person arrested. An officer is not required to have sufficient evidence of guilt to sustain a conviction at the time of the arrest; on the other hand, he must have sufficient evidence to raise more than a mere suspicion of guilt. *Boddie and Brooks v. State,* 6 Md. App. 523, 532; *Radcliffe v. State,* 6 Md. App. 285, 291.

Here, the police officers knew that a felony had been committed. In addition the following facts had come to their knowledge which led them to believe that the appellant had committed the felony:

(1) The cause of death was a gunshot wound made by a .22 caliber bullet.

(2) The police ballistics expert had determined that the fatal bullet had been fired from any one of five different kinds of weapons, one of which was a "Rohm" .22 caliber pistol.

(3) Allen Benjamin Moore, an acquaintance of appellant's, had advised the police on the day of the arrest that the appellant had a .22 caliber pistol very similar to one of the types the police were looking for; that appellant said he couldn't stay at Moore's house if the police were going to come there; that appellant was hiding in the woods in the daytime and returning home at night; and that appellant had told him that he wouldn't be taken alive.

(4) Appellant lived three and one-half miles from the murder scene.

(5) Appellant did not respond to the police officers' knocks on the door of his shack and attempted to elude the police by going out the back window.

Taking into consideration all the information known by the arresting officers and the actions of the appellant, we find that the arresting officers had ample probable cause to believe that the appellant was the individual who had committed the murder. Since the arrest was lawful the admission of appellant's pistol, seized at the time of his arrest, was properly admitted into evidence.[1]

It is next contended that the plaster impression of a shoe print found near the scene of the crime should not have been allowed into evidence because the State failed to show a sufficient connection between the print and the appellant. We disagree.

The shoe print was located approximately thirty feet from the rear of the building where the victim's body was found. A detailed comparison of the cast and the appellant's left shoe was made by a police expert who testified that: "In my opinion the left shoe that Henry Graham submitted to me did make this cast to the exclusion of any other shoe." The expert fully explained the procedure he followed and the findings that led to his opinion.

In determining the admissibility of such evidence, the test is one of probable connection between the offered evidence and the accused. *Parker v. State*, 7 Md. App. 167, 189; *Hall v. State*, 5 Md. App. 599, 602. Here the testimony of an expert unequivocally connected the plaster impression of a shoe print with the appellant. Thus, its admission into evidence was proper and the weight to be accorded it was for the jury.[2] *Presley v. State*, 6 Md. App. 419, 430.

Appellant next contends that the trial court erred in allowing the transcript of the testimony of Allen Benjamin Moore, recorded at appellant's first trial, to be read into evidence. The appellant argues that this amounted to a denial of his constitutional right of confrontation.

1. This same contention was decided adversely to appellant in his first appeal. See *Graham v. State*, 239 Md. 521.

2. This same contention, likewise, was decided adversely to appellant in his first appeal. See *Graham v. State, supra.*

While it is true that the Sixth Amendment to the Federal Constitution insures a criminal defendant the right to confront the witnesses against him, an exception is recognized where the witness is unavailable but has been subjected to cross-examination by the defendant in a prior judicial proceeding. However, "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page,* 390 U. S. 719.

Here the State's Attorney for Worcester County testified that he had made an unsuccessful attempt to locate the witness when it became apparent that a second trial would be necessary. He received information that the witness no longer lived in Worcester County and had moved to Beaufort County, North Carolina. A petition under the Uniform Act to Secure the Attendance of Witnesses (Md. Code, Art. 27, §§ 617-623) was prepared and sent to Beaufort County. All efforts by the Sheriff of Beaufort County to locate the witness upon receipt of the petition were unsuccessful. We find, on this evidence, that the prosecution made a good-faith effort to obtain the witness' presence at trial and therefore, the witness, Allen Benjamin Moore, was "unavailable" within the meaning of the foregoing exception.

The transcript of the testimony read into evidence was taken at appellant's first trial for the murder of Zadok Henry and included the cross-examination of the witness by appellant's counsel who also acted as his counsel at the second trial. Thus, we find no constitutional impediment to its use at the second trial.

Appellant finally contends that the evidence was insufficient to sustain his conviction. We disagree.

The test for the legal sufficiency of evidence in a criminal case tried before a jury was stated by this Court in *Williams v. State,* 5 Md. App. 450, at p. 458:

"In order to meet the legal sufficiency in any criminal case the evidence must show directly

the fact to be proved or support a rational inference of the fact. The fact must be shown or the inference supported beyond a reasonable doubt or to a moral certainty. *Shelton v. State, supra,* at pp. 411-412. And while the clearly erroneous rule is not specifically applicable to jury cases, the Court of Appeals said in *Royal v. State,* 236 Md. 443, 448:

> '[W]e have consistently held that in order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence it is necessary to show that there was no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt.' See *Coates v. State,* 232 Md. 72; *Wright v. State,* 222 Md. 242."

We think the test is met by the evidence presented in this case. The unrebutted testimony of the police ballistics expert disclosed that the fatal bullets were fired from the gun found in appellant's possession. In addition, there was evidence that appellant's shoe matched a footprint found at the scene of the crime. There was evidence that the victim's room was in disarray and that an empty metal box was found lying open on the victim's bed. There was also evidence that appellant was seeking to elude the police and that he had said the police would not take him alive. From this evidence the jury could rationally infer, in accordance with the trial judge's instructions, that the appellant, beyond a reasonable doubt, was guilty of murder in the first degree.

*Judgment affirmed.*