## WILLIE JAMES BILLINGER *v.* STATE OF MARYLAND

[No. 524, September Term, 1969.]

*Decided July 2, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joseph E. Emerson* for appellant.

*H. Edgar Lentz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Hilary D. Caplan* and *Sandra A. O'Connor, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

In our society no person has a constitutional right to be an anonym.[1] So when he is suspected of or accused of having committed a crime he may be displayed by the

---

1. A person may have redress in certain circumstances for invasion of his privacy. See *Time, Inc. v. Hill,* 385 U. S. 374; Prosser, *Privacy,* 48 Cal. L. Rev. 383.

630

State to prospective identifying witnesses. In such circumstance, however, the sixth amendment right to assistance of counsel and the fourteenth amendment guarantee of due process of law may come into play as dictated by the *Wade-Gilbert-Stovall* trilogy of opinions.[2] Those opinions held that a post-indictment lineup conducted after 12 June 1967 in the absence of the accused's counsel or in such manner as to be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law was illegal. They fashioned exclusionary rules, applicable not only to evidence of identifications made at such an illegal lineup but to a judicial identification made by a witness who had identified the accused at such a lineup. Ever since the impact of the opinions reached cases coming before us we have been engaged in a continual interpretation and construction of the holdings, both as to substance and procedure. In *Tyler v. State*, 5 Md. App. 265, 272 we opined that *Wade* indicates that only those pretrial confrontations which are not subject to fair and meaningful objective review later at trial fall within its strictures, holding specifically that the rationale of *Wade* and *Gilbert* was not applicable to confrontations at a public pretrial judicial hearing presided over by a judicial officer, e.g. a preliminary hearing. In *Palmer v. State*, 5 Md. App. 691, 696 we stated that it necessarily followed from the language of *Wade* and *Stovall* that the rules of *Wade* and *Gilbert* apply also to a lineup conducted before indictment and to other pretrial confrontations within the meaning of *Tyler*. In *Smith and Samuels v. State*, 6 Md. App. 59, 66 we held that when a pretrial confrontation was found to be illegal by the denial of due process of law under *Stovall*, the exclusionary rules enunciated in *Wade* and *Gilbert*, as set out by us in *Smith and Samuels*, were applicable. And in *Smith and Samuels*, at 67-70, we formulated the procedure to be followed upon challenge

---

2. *United States v. Wade*, 388 U. S. 218; *Gilbert v. State of California*, 388 U. S. 263; *Stovall v. Denno*, 388 U. S. 293. Each was decided 12 June 1967.

of evidence of identification. We commented on the procedure in *Bailey v. State*, 6 Md. App. 496 and elaborated on it in *Jones v. State*, 9 Md. App. 455, (1970). And see, for example, among the myriad of cases decided by us with respect to identification evidence, *Joyner v. State*, 7 Md. App. 692 and *Gross and Wagstaff v. State*, 8 Md. App. 341.

We have had before us cases involving a confrontation between the accused and an identifying witness which on the facts did not occur at the direct instance of the police nor were the police parties to it. We have held that such a confrontation was not within the contemplation of *Wade* and was not illegal by the reason of absence of counsel. Whether they were illegal under the "unnecessarily suggestive" rule as violating due process, turned on the totality of the circumstances. See *Palmer v. State, supra; Smith v. State*, 6 Md. App. 23; *Coit v. State*, 7 Md. App. 70; *Wethington v. State*, 7 Md. App. 79; *Watson v. State*, 7 Md. App. 225; *Nance v. State*, 7 Md. App. 433; *Simon v. State*, 7 Md. App. 446. The factual circumstances of the present case, however, present questions with reference to the right to counsel and the guarantee of due process of law on a confrontation between a suspect and a prospective identifying witness in a posture not heretofore considered by us.

John Earl Speed and Arthur Newby resided at 2123 East Chase Street in Baltimore City. About 3:00 A.M. on 4 May 1969, Speed, who had been watching television, was asleep on the sofa in the living room on the first floor when there was a knock on the door. He partly opened the door and two men he did not know "ran in on me and started punching on me. * * * So we fought we rumbled all around the place." The intruders finally subdued him after severely beating him, knocking him down and threatening to cut his throat. They went to the second floor and Speed ran out to call the police. He said the incident involving him took 20 to 25 minutes.

Newby was asleep on the second floor and was awakened by someone shaking him. He got out of bed and was

hit and knocked down. He fought and was struck with a mop and a chair. One of the two men assaulting him said, "Come on, man, we can't be messing around here. Let's get out of here." They ran downstairs and left the house. Newby called the police. Clothing, two "prism" lamps, two clocks, the television set and Newby's eyeglasses were stolen.

When Speed returned to the house with assistance the police had arrived. Speed and Newby described one of the assailants as "a heavy set guy with a pug nose." He was wearing a red sweater, red pants and a blue cap. He had cut his hand during the assault.

Police Officer James Horner answered the call to the house. He saw evidence of a fight and blood on the floor and broken items scattered throughout the premises. Speed was bleeding from the ear and mouth and had lacerations about his face. The officer obtained descriptions of the assailants and took Speed and Newby to the emergency room of the Johns Hopkins Hospital for treatment.

About 3:30 A.M. Police Sergeant Edward Mattson was approached by a man at Patterson Park Avenue and Chase Street, about one and one-half blocks from the Speed and Newby dwelling. The man asked that the officer take him to the nearest hospital for treatment of a seriously cut hand. He took him to Johns Hopkins which was the nearest hospital. At the time Mattson knew nothing about the incident at 2123 E. Chase Street. Horner had arrived at the hospital shortly before with Speed and Newby. He saw his sergeant walk in with a man who answered the description of one of the assailants given him by the victims — red sweater, red pants, blue cap, cut hand. Horner brought this to the attention of Speed and Newby. "[T]hey walked over and took a closer look at him, and they both made a positive identification on the scene. He was the suspect they had given me the description of. We had to physically restrain Mr. Speed. He was so zealous in his recognition." The man was appellant. Mattson said that when he walked into the emergency room he said nothing at all to Speed and Newby. "I was

talking to my officer; asking him what he had, and he went on to explain it. At this time Mr. Speed and Mr. Newby indicated this was the man who had broken into their house and assaulted them."

At the trial each of Speed and Newby made a positive judicial identification of appellant as one of their assailants. Evidence as to the extra-judicial identification made at the hospital was brought out on cross-examination of them and thus was not offered by the State as substantive evidence of identity or as corroborative of the judicial identifications. The question on appeal is whether the trial court erred in admitting the judicial identifications.[3]

Appellant concedes that "it was strictly by chance or accident that the victims and appellant were all in Johns Hopkins Accident Room at the same time." He admits that "the lapse of time between the alleged act and the confrontation was extremely short" and that there was no discrepancy beween the description given by the victims and the actual description of appellant. But he claims that Officer Horner directing the victims' attention to appellant was so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification. We first observe that it is abundantly clear from the evidence that the police did not suggest that appellant was one of the assailants. Horner, remarking only that the man who came into the accident room with the sergeant fit the description given (and it was obvious that he did), asked if the victims wanted to look at him. Each victim made crystal clear upon detailed inquiry by the court that his judicial identification was based upon observations made at the time of the crime and not upon

3. There was no pretrial motion to suppress the identifications and no objection was made when they were offered at trial. Nor was motion made to strike when it was brought out that there had been a pretrial confrontation at which an identification was made. The matter of the admissibility of the judicial identifications would not be before us, see *Smith and Samuels v. State, supra, Bailey v. State, supra,* and *Jones v. State, supra,* had the lower court not raised the question itself after the evidence was in and indicated that motion to strike should be made. It was only then that it was made. The court denied the motion at the close of all the evidence.

the confrontation at the hospital. Even if it is assumed that the confrontation at the hospital was illegal we think that the evidence in law was sufficient for the trial court to find that the judicial identifications had a source independent therefrom and thus the pretrial confrontation did not taint the judicial identifications so as to render them inadmissible.

But we do not believe that the confrontation at the hospital was illegal. First, as to the right to the assistance of counsel, it is true that under the broad language of *Wade* and *Gilbert,* the holdings, as we have found, cannot be limited to post-indictment lineups. But in *Wade* the court in determining that the presence of counsel, absent an effective waiver, was required at a post-indictment lineup said, 388 U. S. at 237:

> "No substantial countervailing policy considerations have been advanced against the requirement of the presence of counsel. Concern is expressed that the requirement will forestall prompt identifications and result in obstruction of the confrontations. As for the first, we note that in the two cases in which the right to counsel is today held to apply, counsel had already been appointed and no argument is made in either case that notice to counsel would have prejudicially delayed the confrontations. Moreover, we leave open the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay."

This language does not preclude modification of the *Wade* rule when there is a prompt confrontation. In a prompt confrontation there are substantial countervailing policy considerations against the requirement of the presence of counsel. The confrontation here was within minutes after the commission of the crime and took place at 3:30 o'clock in the morning when there would necessarily be a long delay in obtaining counsel for appellant to observe a formal lineup. We quote Chief Judge Bazelon who said

in *Russell v. United States,* 408 F. 2d 1280 (D. C. Cir., 1969), cert. den. 395 U. S. 928:

"Such delay may not only cause the detention of an innocent suspect; it may also diminish the reliability of any identification obtained, thus defeating a principal purpose of the counsel requirement.

"Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain. Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty. There may also be unconscious or overt pressures on the witness to cooperate with the police by confirming their suspicions. And the viewer may have been emotionally unsettled by the experience of the fresh offense.

"Yet, on the other hand, recognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his 'mind's eye' a face or a figure which he is hard put to describe adequately in words. Though the image of an 'unforgettable face' may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized features, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man.

"Balancing all the doubts left by the myste-

ries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.' This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject." At 1284.

We conclude that the confrontation here was not such as required the presence of counsel within the contemplation of *Wade*. This conclusion rests on a general rule that it is not improper for the police promptly to display a freshly apprehended suspect for identification by one who minutes before had been the victim of or an eyewitness to the commission of a crime. But we caution that this rule serves to approve, as not illegal by the absence of counsel, only those identifications made, to all practical purpose, on the scene within minutes of the witnessed crime.

Of course the confrontation in the present case would be illegal, independent of the right to counsel, if it was conducted in such manner as to deny due process of law. And it would violate due process of law if it were so unnecessarily suggestive as to be conducive to irreparable mistaken identification. But although a single-suspect or one-on-one confrontation may be suggestive, we believe that prompt on the scene confrontations, absent special elements of unfairness, do not entail due process violations. It was so held in *Wise v. United States*, 127 U. S. App. D. C. 279, 383 F. 2d 206 (1967), cert. denied, 390 U. S. 964. The record here does not reveal any special elements of unfairness or any unusually suggestive circumstances in appellant's confrontation with Speed and Newby. All the officer did was direct the victims' attention to a person, who, as was perfectly apparent on even casual observation, met the description given by the prospective identifying witnesses to the police. We see no substan-

tial likelihood of irreparable misidentification in this confrontation. On the contrary the police action fostered "the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh." *Bates v. United States,* 132 U. S. App. D. C. 36, 405 F. 2d 1104 (1968) at 1106.

We find that the pretrial confrontation here was legal. Being legal it could not taint the challenged judicial identifications. As the judicial identifications were not tainted by the pretrial confrontation they were properly admissible and we so hold.

Appellant was convicted by the court in the Criminal Court of Baltimore of robbing Newby for which he was sentenced to 7 years, of the burglary of the dwelling at 2123 E. Chase Street for which he was sentenced to 12 years and of the assault upon and battery of Speed for which he was sentenced to 2 years. The sentences were imposed to run concurrently. The contention of appellant does not provide reason to reverse these judgments.

*Judgments affirmed.*