## MARK LESTER DAVIS *v.* STATE OF MARYLAND

[No. 137, September Term, 1971.]

*Decided November 15, 1971.*

The cause was argued before MORTON, ORTH and CARTER, JJ.

*Edward L. Coleman* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *Gary Melick, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant Davis was convicted in the Criminal Court of Baltimore of robbery with a dangerous and deadly weapon and sentenced to twelve years imprisonment by Judge Anselm Sodaro, sitting non-jury. He appealed from this judgment.

The appellant contends that his identification at the pretrial confrontation was constitutionally invalid because: 1) of the absence of counsel in violation of his rights under the Sixth Amendment and 2) of the fact that identification was made under circumstances which denied him due process of law under the Fourteenth Amendment.

## FACTS

The evidence of the State consisted of the testimony of the victim Damon Edwards and two Baltimore City police officers. The defense presented the brief testimony of the appellant and his younger brother Ronald. Edwards testified that while he was performing the duties of his employment at a gasoline service station slightly after 1:00 a.m. on August 31, 1970, his co-worker called his attention to a group of young boys gathered on a corner about fifty feet from the station. The co-worker suspected that the group was planning to hold up the station. After remaining on the corner about ten minutes, two of the boys in the group walked to the service station. The appellant seated himself in a chair outside the office door and his companion sat on the side of the walk outside the office. The boys remained at the station for about five minutes before the robbery. During a part

of this time the victim was standing in the office doorway about seven to ten feet from the appellant and face to face with him. The area was well illuminated. While the appellant and his companion were seated, a third boy arrived at the office and requested the victim to change a dollar. Immediately after the victim accommodated the third boy, he drew a gun on the victim and demanded all the money he had on his person. The victim was robbed of $50; he was ordered to place the change on his person in a towel held by the appellant. After the money was taken, all three of the boys departed. One was wearing red pants and a red T-shirt with short sleeves and the other two were wearing white T-shirts and blue dungarees. Immediately after the incident, the victim unsuccessfully attempted to telephone the police. About ten to fifteen minutes later Police Officer Urey drove up to the station. At this time the victim reported the incident and described the clothing worn by the boys who had robbed him. The officer promptly put the report on police radio at about 1:50 a.m. About twenty minutes after the robbery, the police returned to the station with a single person inside a police cruiser. The officers in charge of the cruiser then asked the victim to look inside the cruiser through the window to see if the person inside was one of the boys who had robbed him. The victim did so and identified the appellant as one of the participants in the robbery. The appellant was then wearing the same clothing which the victim had previously described to the police as having been worn by one of the participants at the time of the robbery.

Officer Law testified he had received the robbery report about 1:50 a.m. and immediately thereafter came upon two Negro males who fitted the radio description walking down the street about five blocks from the scene of the robbery. When his patrol car stopped near them, the one in blue ran and the one in red increased his gait. He arrested the one in red who had a towel draped over his shoulder and placed him in a patrol cruiser. The other

officers then took him to the service station where the crime had been committed. The appellant testified that on the evening of August 31st, he was wearing a long sleeved, light maroon-colored shirt and sandy brown-colored pants. The appellant's younger brother Ronald testified that he had been with the appellant between 11:30 and 12:00 on the evening of August 31st and that the appellant was then wearing a red undershirt and brown dungarees.

## I

The milestone cases of *United States v. Wade,* 388 U. S. 218 and *Gilbert v. California,* 388 U. S. 263 (1967) held that a pretrial post-indictment lineup arranged by the police for the purpose of an out-of-court confrontation between the accused and eye-witnesses was a critical stage of the prosecution at which the accused was entitled to the presence of counsel under the Sixth Amendment. In so ruling in *Wade,* the Supreme Court said at p. 237:

> "* * * No substantial countervailing policy considerations have been advanced against the requirement of the presence of counsel. Concern is expressed that the requirement will forestall prompt identifications and result in obstruction of confrontations. As for the first, we note that in the two cases in which the right to counsel is today held to apply [*Wade* and *Gilbert*], counsel had already been appointed and no argument is made in either case that notice to counsel would have prejudicially delayed the confrontation. * * *"

In holding that the rationale of *Wade* did not require the presence of counsel at all pretrial confrontations, this Court speaking through Chief Judge Murphy in *Tyler v. State,* 5 Md. App. 265, said at 272:

> "We think it evident that *Wade* does not hold that all pretrial confrontations between the ac-

cused and the victim or other identifying witnesses are thereby deemed to be critical stages of the criminal prosecution. In our opinion, *Wade* indicates that only those pretrial confrontations that are not subject to fair and meaningful objective review later at the trial fall within its strictures, so that where the circumstances of the confrontation can be fully developed at the trial by cross-examination of the State's witnesses, or by presentation of witnesses on behalf of the defendant, the right to counsel does not attach. * * *"

In *Billinger v. State,* 9 Md. App. 628 (1970) we held that the ruling in *Wade* requiring the presence of counsel at pretrial identifications did not apply to a prompt confrontation which took place within 30 minutes after the crime had been committed where there were no special circumstances of unfairness involved. In that case the identification by the victim took place at a hospital where the police had taken both the suspect and the victim. The similarity of the suspect's appearance to that previously given by the victim was called to the victim's attention by the police. The victim then identified the suspect. In holding the identification legal, this Court speaking through Judge Orth quoted extensively from *Russell v. United States,* 408 F. 2d 206 (D.C. Cir. July 1967) which concerned an identification of a suspect by an eyewitness at the scene of the crime within minutes after the occurrence. In *Russell* the Circuit Court of Appeals held the rationale in *Wade* did not require the presence of counsel at the pretrial identification in that case. In quoting from the opinion in *Russell,* we set forth in *Billinger* at page 635:

"Such delay [incident to the presence of counsel] may not only cause the detention of an innocent suspect; it may also diminish the reliability of any identification obtained, thus defeating a principal purpose of the counsel requirement. * * *

> Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.' This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considerations' [to those present in *Wade*] which we are reluctant to assume the Supreme Court would reject. At 1284."

In *Spencer v. State,* 10 Md. App. 1 (1970) this Court held that the presence of counsel was not required where there was a prompt pretrial identification of the suspect by the victim within minutes after the crime had occurred. In that case the police found the suspect hiding in the bushes outside the victim's house and promptly exhibited the suspect to the victim. In so holding, we said at page 4: "At such confrontation the absence of counsel for the suspect does not render it illegal."

In the light of the rationale in *Russell* and the previous holdings of this Court in *Tyler, Billinger,* and *Spencer,* we conclude that the trial court was not in error in holding that the absence of counsel at the pretrial identification under the circumstances of this case was not a violation of the appellant's rights under the Sixth Amendment.

## II

The appellant's second contention is that irrespective of his right to the presence of counsel, he had been denied due process under the circumstances of the confrontation in this case. In *Stovall v. Denno,* 388 U. S. 293, which was decided by the Supreme Court at the same time as *Wade* and *Gilbert,* the Court held that if a pretrial confrontation is conducted in a manner "unnecessarily suggestive and conducive to irreparable misidentification", it constitutes a denial of due process and cited *Palmer v. Peyton,* 359 F. 2d 199 (C.A. 4th Cir. 1966)

as precedent for the holding. In *Stovall,* the suspect was exhibited to the victim two days after a vicious attack upon her and she identified him from her hospital bed. He was at that time in the custody of police officers. In holding that these circumstances were not unnecessarily suggestive and conducive to irreparable misidentification, the Supreme Court said at page 302:

> "* * * The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative. * * * 'Here was the only person in the world who could possibly exonerate Stovall. * * *' The hospital was not far distant from the courthouse and jail. No one knew how long Mrs. Behrendt might live. * * * Under these circumstances, the usual police station lineup, which Stovall now argues he should have had, was out of the question."

This Court held in *Billinger* that the circumstances surrounding a prompt pretrial identification as shown in that case [1] did not constitute a denial of due process under *Stovall.* In so holding, we said at pages 636-637:

> "* * * But although a single-suspect or one-on-one confrontation may be suggestive, we believe that prompt on the scene confrontations, absent special elements of unfairness, do not entail due process violations. It was so held in *Wise v. United States,* 127 U. S. App. D. C. 279, 383 F. 2d 206 (1967), cert. denied, 390 U. S. 964.

---

1. For the circumstances in *Billinger,* see previous recitals in this opinion.

* * * On the contrary the police action fostered 'the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh.' *Bates v. United States,* 132 U. S. App. D. C. 36, 405 F. 2d 1104 (1968) at 1106."

In *Bates v. United States, supra,* in which then Circuit Judge Burger (now Chief Justice of the United States) delivered the opinion, a suspect was identified by the victim at the scene of the crime within 30 minutes after it had occurred. He was brought to the victim's residence by the police as the sole occupant of a police patrol wagon. The victim looked at him in the patrol wagon and identified him as her attacker. In holding the identification valid and not a denial of due process, the Court said at page 1106:

"There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup'; when this occurs near the time of the alleged criminal act, such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule, allowing spontaneous utterances, a standing which they would not be given if uttered at a later point in time. * * *

* * *

"* * * the police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent

suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. *Wise v. United States,* 127 U. S. App. D. C. 279, 383 F. 2d 206 (1967) cert. denied 390 U. S. 964. * * *"

In *Spencer v. State, supra,* we held that the circumstances surrounding a prompt pretrial identification [2] did not constitute a denial of due process under *Stovall.* In so holding, we said at page 4:

"* * * there is ordinarily no substantial likelihood of irreparable misidentification for the reasons set out in *Billinger.* * * *"

We therefore conclude that under the principles enunciated in *Stovall* and followed in *Bates, Billinger,* and *Spencer,* the confrontation of the suspect by the victim at the scene of the crime within 30 minutes of the occurrence under the totality of the circumstances in this case was not unnecessarily suggestive and conducive to irreparable misidentification. In so holding we are not unmindful of the special emphasis which the appellant places on the circumstance that at the time he was identified, he was the sole occupant of a police cruiser and was identified by the victim looking at him through the vehicle's window. He contends that the victim's viewing of him under these circumstances was in itself unnecessarily suggestive and conducive to misidentification. We disagree. While a person who is in police custody and is singly exhibited to an eyewitness to the crime undoubtedly creates a suggestive situation, the fact that his police custody involves being placed in a patrol wagon as the sole occupant thereof rather than simply being in the physical presence of a police officer would seem to make little if any difference so far as the extent of the suggestiveness is concerned. In both situations the suspect is alone in police custody and the police are in ef-

2. For the circumstances in *Spencer,* see previous recitals in this opinion.

fect saying to the witness, "We have apprehended this person because we believe he may possibly be the one who committed the crime. Look at him and tell us whether you can identify him as the culprit." Furthermore, in *Bates v. United States, supra,* the Court held that the viewing of a suspect while he was the sole occupant of a patrol wagon did not make the identification a violation of due process under the rationale of *Stovall.* We likewise conclude that the same circumstance in this case did not make the identification illegal.

We further conclude therefore that the trial court was not in error in holding there was no denial of due process under the circumstances of this case.

*Judgment affirmed.*