HARRY LEE BOOTH *v.* STATE OF MARYLAND

[No. 232, September Term, 1972.]

*Decided January 5, 1973.*

The cause was argued before MORTON, THOMPSON, POWERS and DAVIDSON, JJ.

*James F. Garrity* for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *V. Lanny Harchenhorn, State's Attorney for Carroll County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Harry Lee Booth, the appellant, was convicted of grand larceny and burglary by the Circuit Court for Carroll County, Judge Edward O. Weant, Jr. presiding without a jury. He was sentenced to four years on each charge to be served concurrently. Booth contends: (1) his conviction for burglary should be reversed because he was subjected to double jeopardy; (2) the trial court committed error in admitting an impermissibly suggestive identification; (3) a search of his bedroom was constitutionally improper and articles therefrom should not have been admitted into evidence; (4) the transcript of the testimony of a witness at a prior trial should not have been admitted into evidence at the second trial; and (5) the sentence at the second trial was improper in that it was greater than he received at his first trial.

The evidence showed that when Mr. & Mrs. Fred Eckrick returned home about 11:30 p.m., Saturday evening, August 30, 1969, they found a strange car parked in their driveway bearing Michigan registration plate No. FM 1494. When Mr. Eckrick noticed "a man run through the house" he backed his car up against the Michigan car. As Mr. Eckrick got out of his car, a woman came up to him and asked if he knew where Charles White lived. A short time later, appellant, perspiring heavily, appeared and claimed that he was "taking a leak." Mr. Eckrick directed his wife to call the police and while that was being done the man and woman got in their car, maneuvered around Eckrick's car, hit a light standard and drove off.

About fifteen minutes later a Maryland State Trooper arrived and took a description of the people and their automobile and its registration number. The trooper broadcast this information on his radio and then proceeded to talk with Eckrick when "his radio come on and he jumped in the car and away he went. And it was about fifteen minutes later that he came back, fifteen, twenty minutes later, he come back with two people."

Investigation revealed that the back door of the home had been broken and that a considerable number and variety of items had been taken.

Sgt. D. L. Schlotterbeck of the Maryland State Police testified it was he who had received the information given by Mr. Eckrick and broadcast it over the State Police radio network. When advised by radio that two suspects were in custody, Schlotterbeck drove to their location and observed appellant standing handcuffed by a police car. Schlotterbeck advised appellant of his constitutional rights despite his protestation "you don't need to bother readin' them to me. I know my rights." Asked whether he had been at the Eckrick home, appellant said he had and that he had stopped to urinate. Booth's wife granted permission to search the automobile which search produced nothing incriminating. Schlotterbeck drove appellant to the Eckrick residence and removed him from the police car. Booth volunteered "this is where I was at and that's the man I talked to."

After an investigation revealed that Mr. & Mrs. Booth were staying at the home of her brother and sister-in-law, Mr. & Mrs. Charles White, Schlotterbeck went to the White home and advised Mr. White of his investigation and that he was searching for some described stolen property. Mr. White volunteered that certain property was brought in there the night before by Mr. & Mrs. Booth, and readily consented to a search of his home.

Schlotterbeck and another trooper followed Mr. White into his living room where Mr. White removed a .22 caliber Hornet rifle with a mounted scope from a gun rack on the wall and gave it to Trooper Schlotterbeck. Mr. Eckrick subsequently identified this rifle as belonging to him and "worth about a hundred." The troopers then followed Mr. White upstairs and Schlotterbeck testified "there is a bedroom there and all the property, a lot of the property I could observe. There it was. It appeared to have been the same type of property taken from the Eckrick residence."

An automobile tire stolen from the Eckrick home was

found on a pile of trash on the Whites' premises. The next day, with the help of appellant's wife, the troopers recovered other stolen goods scattered along the highway. Included were a towel, a wig, a radio, a steam iron, and a ladies billfold which had contained $41 when stolen.

The testimony of Charles Clayton White given at appellant's first trial was read into the record by the State's Attorney. Although there was objection that the state had not made sufficient efforts to locate Mr. White and have him testify in person, there was no objection to the failure to call the court reporter to identify the testimony. Mr. White's testimony was that Mr. & Mrs. Booth were living with him and his wife on the evening of August 30, 1969. The Booths left the Whites' house about 4 or 4:30 in the afternoon and returned between 8:30 and 9 and brought with them the stolen goods later found in his home. He testified that Mr. Booth gave him the .22 caliber Hornet rifle asserting that he had bought it at auction whereupon Mr. White put it in his gun rack. The defense offered no evidence.

## I Double Jeopardy

In an unreported opinion, *Booth v. State,* No. 477, Sept. Term, 1969, filed May 21, 1970, this Court reversed the convictions of Harry Lee Booth, the appellant herein, for burglary and grand larceny. At the time we pointed to the ambiguity in the record as to exactly what had transpired below, but we stated, in effect, that a fair appraisal showed Booth had been convicted of both charges under the general verdict of guilty. The law is clear that when an accused is convicted of a crime and the conviction is reversed there is no double jeopardy when he is retried on the same charge. *Gray v. State,* 254 Md. 385, 255 A. 2d 5. Booth's reliance on *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969) to support his contention that his reconviction on the charge of burglary constituted double jeopardy is misplaced. In *Benton* the accused had been acquitted at the first trial whereas in the instant case he was convicted at the first

trial of both charges and our mandate reversed both convictions.

## II Identification

Appellant contends that Mr. Eckrick's identification of him should have been suppressed because their confrontation, 45 minutes to one hour after the crime had been discovered, was impermissibly suggestive, conducive to irreparable mistaken identification, and was conducted without appellant's having had the benefit of counsel. In support of these two principles appellant cites *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149 (1967) ; *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178 (1967), for the former and *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967), for the latter.

*Kirby v. Illinois,* 406 U. S. 682, 92 S. Ct. 1877, 32 L.Ed.2d 411 (1972), held that an individual's right to counsel at a police lineup does not accrue until that individual is indicted or otherwise formally charged with the crime. As appellant, then a suspect, was returned to the scene of the crime within an hour after its commission, and prior to any charges, his contention based upon lack of counsel is meritless.

If the confrontation between appellant and the Eckricks was impermissibly suggestive, there may have been a violation of due process. *Billinger v. State,* 9 Md. App. 628, 267 A. 2d 275; *Wethington v. State,* 7 Md. App. 79, 253 A. 2d 523. A confrontation of a handcuffed criminal suspect with the victim approximately one hour after the victim had last observed this suspect might in some circumstances present a troublesome question. *Davis v. State,* 13 Md. App. 394, 283 A. 2d 432; *Billinger v. State, supra.* See, however, *Neil v. Biggers,* 12 Cr. L. 3037 (Supreme Court of the United States No. 71-586, filed December 6, 1972). In the instant case, however, identification was not an issue. At the time of his apprehension, after proper warnings, Booth admitted he had been at

Eckrick's residence. The voluntariness of this statement was not challenged. Moreover, the record shows that when Schlotterbeck removed appellant from the car at the Eckrick residence, Booth spontaneously asserted that this was the house where he had been and indicated that Mr. Eckrick was "the man I talked to." The description of the Booths and their automobile, given by the victim and broadcast over the police radio, was unusually explicit. Mrs. Booth was shown to be the registered owner of the automobile bearing the tag number reported by the victim. According to White's testimony, Booth was in possession of the stolen gun as well as other property shortly after the crime had been committed. Under these circumstances, even if we assume the confrontation to be impermissibly suggestive, any error in admitting the testimony would be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967).

### III Search and Seizure

Booth contends that the warrantless search of "his" bedroom at the White home was unreasonable even though based on the consent of the householder. To support his allegation that he has standing to object, appellant cites *Jones v. United States*, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960) and *Hebron v. State,* 13 Md. App. 134, 281 A. 2d 547. This contention might also present a close question were it not for the fact that a stolen rifle, valued at $100, was not in the bedroom but was produced by Mr. White from his living room and given to the State Police. White had testified that he had received the gun from Booth.[1] The possession of some of the items recently stolen raises an inference that the accused was the thief of all of the articles stolen. *Boswell v. State,* 5 Md. App. 571, 249 A. 2d 490; *Clark v. State,* 6 Md. App. 91, 250 A. 2d 317. See *Christopher v. State,*

---

1. We do not need to consider the cigarette lighter, the tire or the articles found along the highway.

9 Md. App. 277, 263 A. 2d 605. Thus, we have no difficulty in declaring beyond a reasonable doubt that the introduction of the items found in "his" bedroom, if improper, did not contribute to the verdict. *Chapman v. California, supra.*

### IV Lack of Confrontation

Charles Clayton White did not testify at appellant's trial. Rather, his testimony at appellant's prior trial was read into evidence. Recognizing such a procedure is in some instances proper, *Barber v. Page,* 390 U. S. 719, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968), appellant contends that the state did not make a diligent effort to produce White at the trial and therefore he was denied his Sixth Amendment right to be confronted with the witnesses against him. This Court reversed appellant's prior convictions in an unreported opinion filed in May of 1970. The trial in this case was not held until March of 1972, and most of the efforts to locate White were not undertaken until two weeks before trial. The appellant alleges that because the state did not conduct their search for White until shortly before his second trial, they could not have made a diligent effort to locate him. A deputy sheriff for Carroll County testified that "on one of the previous cases where summonses were issued for this trial, I went to the Whites' residence . . . the house was vacant so I . . . goes to the post office in Mount Airey . . . they told me . . . that Mr. White was deceased and the wife was gone and left no forwarding address." The State's Attorney's secretary testified that "we just went ahead on the assumption that he was dead and then we decided we had better prove it." Her efforts to locate the Whites involved leads and contacts with the Carroll County Department of Social Services, an Employment Office in Westminster, a Social Security office, the Department of Motor Vehicles, the telephone company, checking the Vital Statistics Department for the City of Baltimore and for the State. Acting on leads given by

various sources she also contacted the Bureau of Vital Statistics for the states of California, Virginia and West Virginia. The Whites' ex-landlady said that she had heard that they moved to West Virginia, that they had moved without giving notice and that no forwarding address was left. An ex-State Trooper, who had been involved in the case, testified that he had received information they had moved to Ohio. A former employer of the Whites' son testified that from conversations with his ex-employee he assumed Mr. & Mrs. White had moved to West Virginia. From the testimony outlined above, we agree with the trial court's statement that "the search was most belated but I believe when it finally got started it was diligent . . . they were relying on the statement that he was dead until it suddenly came to mind that maybe they had better prove the situation . . . and I think they made a diligent search at the last minute." *Graham v. State,* 7 Md. App. 638, 256 A. 2d 709. Compare *Lindsay v. State,* 2 Md. App. 330, 234 A. 2d 479.

## V Sentence

On March 3, 1972, appellant was sentenced to four years incarceration to date from July 3, 1971. Appellant claims that he was deprived of credit for the time spent incarcerated after the remand of his case while awaiting the retrial. He claims that a harsher sentence was imposed on retrial than he was given in his original sentence.

The record shows that upon reversal by this Court of his prior convictions, Booth was released on nominal bail. Upon his failure to appear for retrial, a bench warrant was issued. As the sentence ran from July 3, 1971, appellant was given credit for the 8 months he was actually incarcerated under his prior, invalid convictions. The trial judge took the position that the time spent incarcerated after his return under the bench warrant for failure to appear was not to be counted on his sentence. Under these circumstances we see no inconsistency with

the tenets of *North Carolina v. Pearce,* 395 U. S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969).

*Judgments affirmed.*